UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

HERBERT E. ROBERTSON,

    Plaintiff,

v.                                        CAUSE NO. 3:22-CV-887-DRL-MGG

NANCY MARTHAKIS,

    Defendant.

## OPINION AND ORDER

Herbert E. Robertson, a prisoner without a lawyer, filed a complaint, alleging that Dr. Nancy Marthakis has been providing him constitutionally inadequate medical care since his transfer to Indiana State Prison (ISP) on December 30, 2021. ECF 2. He later filed a motion for a preliminary injunction, asking that the court order the prison to follow a specialist's recommendation for a visit to a pain clinic and a prescription for Gabapentin.

"A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Under 28 U.S.C. § 1915A, the court still must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Mr. Robertson's complaint goes into great depth about his medical history. It is repeated here only as necessary. The complaint focuses on four main claims: (1) delay in

seeking specialized care, (2) inadequate pain management, (3) inadequate accommodation for his physical limitations, and (4) lack of informed consent when prescribed Dilantin.

A.   *Delay in Care.*

When Mr. Robertson first arrived at ISP On December 30, 2021, he reports that he was still nursing injuries that happened after several falls at his former facility. ECF 2 ¶ 7. Shortly after the transfer, he alleges he fell twice more, after which his right leg would not support him and he had severe pain, bruising, and swelling. *Id.* ¶ 8. The nurse who treated him on January 6, 2022, contacted Dr. Marthakis, who ordered that Mr. Robertson use a walker for six months, not use stairs, and receive a bottom range pass. *Id.* She ordered that he be given Toradol for pain, and Dr. Marthakis scheduled an appointment to see him on January 11, 2022. *Id.* ¶¶ 8-9.

At that appointment, Mr. Robertson alleges that Dr. Marthakis personally noted the swelling, discoloration, and Mr. Robertson's inability to put weight on that leg. *Id.* ¶ 9. Mr. Robertson reports that he told Dr. Marthakis his right leg was numb below the knee. *Id.* He says he asked for an MRI and for an offsite orthopedic consult for his spine and leg because several prior providers had said he needed advanced imaging. *Id.* Dr. Marthakis reportedly became angry, telling him she should not be treating him for an injury that occurred almost a year ago at another prison and those procedures cost thousands of dollars, so he would not be getting them. *Id.*

Though Mr. Robertson began using a walker after his falls at ISP, he alleges he fell again on March 23, 2022, when his right leg gave out. ECF 2 ¶ 12. An x-ray taken the next

2

day showed a broken toe and a possible foot fracture. *Id.* ¶ 13. At this point, he was given crutches instead of a walker and received Toradol for the pain. *Id.*

Mr. Robertson saw an outside orthopedic specialist on April 14, 2022 and underwent an MRI on May 16, 2022, which showed severe foraminal encroachment,[1] bone spurring in lower spine, osteoarthritis, and effusions in right knee. ECF 2 ¶ 15. At a June 28, 2022 follow-up with the orthopedic specialist, the specialist said he needed an expedited referral to a spinal specialist for severe foraminal encroachment and severe pain. *Id.* ¶ 23.

Mr. Robertson saw a neurosurgeon about two weeks later on August 11, 2022, who told him that he should have been seen a year ago for the severe foraminal encroachment and severe pain. ECF 2 at ¶ 31. He recommended a consult with a pain clinic, which still has not taken place. *Id.*

Mr. Robertson claims Dr. Marthakis delayed referring him to an outside specialist and ordering an MRI due to costs, not medical judgment. Under the Eighth Amendment, inmates are entitled to constitutionally adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability, a prisoner must satisfy both an objective and subjective component by showing: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A medical need is "serious" if it is one that a physician has

---

[1] "Foraminal encroachment is a term used to describe degeneration of the spinal column which has caused an obstruction of the foramina. The foramina are open spaces on either sides of the vertebra where the spinal nerves pass on their way to other parts of the body."Lahood, Nicholas, *Foraminal Encroachment vs. Foraminal Stenosis*, https://www.lahoodchiro.com/single-post/2017/06/21/foraminal-encroachment-vs-foraminal-stenosis (last visited Dec. 20, 2022).

diagnosed as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Deliberate indifference means that the defendant "acted in an intentional or criminally reckless manner, *i.e.*, the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005). For a medical professional to be held liable for deliberate indifference to an inmate's medical needs, she must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008).

Inmates are "not entitled to demand specific care," *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019), nor are they entitled to "the best care possible," *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Neither negligence nor medical malpractice constitutes deliberate indifference. *Estelle*, 429 U.S. at 106. Courts generally "defer to medical professionals' treatment decisions unless there is evidence that no minimally competent professional would have so responded under those circumstances." *Walker*, 940 F.3d at 965 (citation and internal quotation marks omitted). At the same time, a prisoner is not required to show that he was "literally ignored" to establish deliberate indifference. *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010). "[I]nexplicable delay in responding to an inmate's serious medical condition can reflect deliberate indifference," particularly where "that delay exacerbates an inmate's medical

4

condition or unnecessarily prolongs suffering." *Goodloe v. Sood*, 947 F.3d 1026, 1031 (7th Cir. 2020) (citations and internal quotation marks omitted). Additionally, a "prison physician cannot simply continue with a course of treatment that [she] knows is ineffective in treating the inmate's condition." *Arnett v. Webster*, 658 F.3d 742, 754 (7th Cir. 2011). Thus, "a doctor's choice of the easier and less efficacious treatment for an objectively serious medical condition" can amount to deliberate indifference. *Berry*, 604 F.3d at 441. "Although administrative convenience and cost may be, in appropriate circumstances, *permissible factors* for correctional systems to consider in making treatment decisions, the Constitution is violated when they are considered *to the exclusion of reasonable medical judgment* about inmate health." *Roe v. Elyea*, 631 F.3d 843, 863 (7th Cir. 2011). Mr. Robertson states a claim against Dr. Marthakis for the delay in referring him to a specialist.

      B.    *Pain Management*.

Mr. Robertson also claims Dr. Marthakis has not provided constitutionally adequate pain management care. Mr. Robertson had been taking Naproxen for pain relief, but says this medication is inadequate in addressing his pain. ECF 2 ¶ 17. His complaint details how Dr. Marthakis allegedly did not prescribe the medication recommended by specialists and instead tried alternative drugs that were ineffective.

When Dr. Marthakis first saw Mr. Robertson in January 2022 following his transfer, she prescribed him Cymbalta for pain relief, but that medication was discontinued due to its side effects. ECF 2 ¶¶ 9-10. Then, the outside orthopedic specialist allegedly prescribed him Norco in April 2022 for the pain, but Mr. Robertson reports that

5

Dr. Marthakis refused to fill the prescription, saying, "no one gets Norco at this prison." *Id.* ¶ 15-16. He alleges that she did not prescribe another, equivalent pain medication. *Id.* ¶ 16. In addition, he alleges that she changed his prescription of Naproxen from KOP (Keep on Person) to DOT (Direct Observation Therapy) with a strict order to crush and float on water. *Id.* ¶ 17. This means that, rather than being able to keep the medication in his cell and take as needed, he had to go to the med room at 3:00 am and 3:00 pm to receive the medication. *Id.* ¶ 19. This was difficult to do on his crutches. *Id.* Further, he says taking crushed Naproxen made him sick and he would throw up. *Id.* Dr. Marthakis allegedly refused to change the crush and float order. *Id.* ¶ 22.

Dr. Marthakis next prescribed Pamelor for pain relief at a June 10, 2022 visit, but that was discontinued a few weeks later, due to its side effects. ECF 2 ¶¶ 22, 25. The orthopedic specialist again recommended at the June 28 follow-up visit that Mr. Robertson take a narcotic analgesic, but Dr. Marthakis would not prescribe any. *Id.* ¶¶ 23-24. She instead prescribed Depakote, but Mr. Robertson refused to take it because he was still experiencing side effects from the Pamelor. *Id.* ¶¶ 25-26. Then, the med room ran out of Naproxen as of July 5, 2022. *Id.* ¶ 28. Mr. Robertson informed Dr. Marthakis of this at a July 15 visit, and she said that she would order the medication from a different pharmacy and started him immediately on Dilantin. *Id.* The Dilantin, however, was ineffective, and caused side effects, including slurred speech. *Id.* ¶ 30.

The neurosurgeon Mr. Robertson saw in August 2022 prescribed Gabapentin, but Dr. Marthakis refused to prescribe it because it was a non-formulary drug. ECF 2 at 32. Mr. Robertson alleges that the prison did not receive any Naproxen from that alternate

6

source, and he received no pain medication in any form until August 31, 2022, when he was given Tylenol. *Id.* at ¶ 32. The Tylenol, though, was ineffective in controlling his pain. *Id.* ¶ 34.

A prison doctor may exercise her medical judgment to prescribe an alternative drug to one ordered by a specialist. *See Lockett v. Bonson*, 937 F.3d 1016, 1024 (7th Cir. 2019) ("We routinely have rejected claims, however, where a prisoner's claim is based on a preference for one medication over another unless there is evidence of a *substantial* departure from acceptable professional judgment." (emphasis in original)). But a doctor may not refuse to give a prisoner any painkillers at all after one was prescribed by an outside surgeon. *See Walker v. Benjamin*, 293 F.3d 1030, 1040-41 (7th Cir. 2002). Nor may a doctor flatly refuse to prescribe any prescription-strength pain medication, relying instead on over-the-counter substitutes. *See Hayes v. Snyder*, 546 F.3d 516, 524-25 (7th Cir. 2008). Here, Mr. Robertson has plausibly alleged that his pain medication treatment is constitutionally inadequate.

    C.    *Accommodations for Serious Medical Needs.*

Mr. Robertson next alleges that Dr. Marthakis refused to give him necessary accommodations to account for his limited mobility. Specifically, he complains that he asked several times to be housed in the infirmary, where he would not have to walk on crutches to get his medications or for meals. ECF 2 ¶¶ 13, 19, 22, 28. She never granted his request; and, as a result, he says he often missed meals because it was too difficult and painful for him to travel to chow hall for meals. *Id.* A refusal to grant an accommodation for a serious medical need can constitute deliberate indifference. *See Palmer v. Franz*, 928

F.3d 560, 564 (7th Cir. 2019). Thus, Mr. Robertson states a plausible claim against Dr. Marthakis for a failure to accommodate a serious medical need.

    D.    *Lack of Informed Consent.*

Next, Mr. Robertson asserts a claim for lack of informed consent surrounding the prescription for Dilantin. ECF 2 ¶ 39. He alleges that Dr. Marthakis misled him to get his consent to take the medication and failed to inform him of the substantial risks of Dilantin. *Id.* ¶¶ 28, 39. She reportedly told him that Dilantin is not a mental health drug and is used for pain. *Id.* ¶ 28. The Dilantin, however, caused side effects, including dizziness, irritability, unsteadiness, and slurred speech. *Id.* ¶ 33.

Prisoners have a right under the Fourteenth Amendment to informed consent about medical treatment:

> A prisoner's claim of the violation of his right to informed consent is evaluated under a two-step inquiry. The prisoner must first establish that his right to informed consent was violated. To do this, the prisoner must prove that (1) he was deprived of information that a reasonable patient would deem necessary to make an informed decision about his medical treatment, (2) the defendant acted with deliberate indifference to the prisoner's right to refuse treatment, and (3) if the prisoner had received the information, he would have refused the treatment. If the prisoner establishes that his right to informed consent has been violated, we then take the second and final step of balancing the prisoner's right to informed consent against countervailing state interests. Liability arises only if, in the end, the prisoner's right outweighs the state interests.

*Knight v. Grossman*, 942 F.3d 336, 343–44 (7th Cir. 2019). Mr. Robertson may proceed on this claim against Dr. Marthakis.

E.      *First Amendment Retaliation.*

Finally, Mr. Robertson alleges that the motivation behind several of Dr. Marthakis' actions was retaliation for grievances he filed and for those times the ACLU contacted the prison on his behalf. ECF 2 ¶ 41. However, it is unnecessary to add a First Amendment retaliation claim here because the underlying alleged retaliatory acts state a claim for constitutionally inadequate medical care. Proceeding on different constitutional theories based on the same facts is redundant. *See Hambright v. Kemper*, 705 F. App'x 461, 462 (7th Cir. 2017) (affirming dismissal of Eighth Amendment claim because the same facts comprised a more applicable First Amendment claim); *Conyers v. Abitz*, 416 F.3d 580, 586 (7th Cir. 2005) (dismissing additional claims based on same circumstances because the claim "gains nothing by attracting additional constitutional labels"); *see also Graham v. Connor*, 490 U.S. 386, 395 (1989) (analyzing allegations under the most "explicit textual source of constitutional protection").

F.      *Preliminary Injunction.*

In addition, Mr. Robertson filed a motion for a preliminary injunction because more than three months have passed since the neurosurgeon recommended being seen at a pain clinic and since he prescribed Gabapentin, but Mr. Robertson has not been to a pain clinic and receives only Tylenol for pain. ECF 8 ¶¶ 1-4.

A preliminary injunction is an "extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on

9

the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). On the first prong, "the applicant need not show that [he] definitely will win the case." *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020). However, "a mere possibility of success is not enough." *Id.* at 762. "A strong showing . . . normally includes a demonstration of how the applicant proposes to prove the key elements of its case." *Id.* at 763 (quotation marks omitted). In assessing the merits, the court does not simply "accept [the plaintiff's] allegations as true, nor do[es] [it] give him the benefit of all reasonable inferences in his favor, as would be the case in evaluating a motion to dismiss on the pleadings." *Doe v. Univ. of S. Indiana*, 43 F.4th 784, 791 (7th Cir. 2022). Instead, the court must make an assessment of the merits as "they are likely to be decided after more complete discovery and litigation." *Id.*

As to the second prong, "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with . . . injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. Mandatory preliminary injunctions—"those requiring an affirmative act by the defendant"—are "cautiously viewed and sparingly issued." *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020). Additionally, in the prison context, the court's ability to grant injunctive relief is significantly circumscribed; any remedial injunctive relief "must be narrowly drawn, extend no further than necessary to remedy the constitutional violation, and use the least intrusive means to correct the violation of

10

the federal right." *Westefer v. Neal*, 682 F.3d 679, 681 (7th Cir. 2012) (citations and internal quotation marks omitted); *see also Rasho v. Jeffreys*, 22 F.4th 703, 711-13 (7th Cir. 2022) (outlining the strict limitations on granting injunctive relief under the Prison Litigation Reform Act).

Based on the only materials before the court, it would seem Mr. Robertson's medical needs are not currently being met. The Warden of Indiana State Prison has both the authority and the responsibility to ensure that inmates at his facility are provided constitutionally adequate care under the Eighth Amendment. *See Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011). Therefore, the Warden will be added as a defendant, and Mr. Robertson will be allowed to proceed on an Eighth Amendment claim against the Warden in his official capacity for injunctive relief related to his ongoing need for constitutionally adequate medical care. The court will order the Warden to respond to the preliminary injunction motion before taking further action on it.

For these reasons, the court:

(1) DIRECTS the clerk to add as a defendant the Warden of Indiana State Prison in his official capacity;

(2) GRANTS Herbert E. Robertson leave to proceed against Dr. Nancy Marthakis in her individual capacity for compensatory and punitive damages for providing constitutionally inadequate medical care since January 2022 by (a) delaying in seeking care from an outside specialist, (b) providing constitutionally inadequate pain management, and (c) refusing to provide medically necessary accommodations in violation of the Eighth Amendment;

11

(3) GRANTS Herbert E. Robertson leave to proceed against Dr. Nancy Marthakis in her individual capacity for compensatory and punitive damages for administering Dilantin without his informed consent in violation of the Fourteenth Amendment;

(4) GRANTS Herbert E. Robertson leave to proceed against the Warden of Indiana State Prison in his official capacity for injunctive relief to receive constitutionally adequate medical care for his leg and back pain as required by the Eighth Amendment;

(5) DISMISSES all other claims;

(6) DIRECTS the clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Dr. Nancy Marthakis at Centurion Health of Indiana, LLC, with a copy of this order, the complaint (ECF 2), and the motion for preliminary injunction (ECF 8);

(7) DIRECTS the clerk, under 28 U.S.C. § 1915(d), to request a Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) the Warden of Indiana State Prison at the Indiana Department of Correction with a copy of this order, the complaint (ECF 2), and the motion for preliminary injunction (ECF 8);

(8) DIRECTS the clerk to fax or email a copy of the same documents to the Warden of the Indiana State Prison at the Indiana State Prison;

(9) ORDERS Centurion Health of Indiana, LLC, and the Indiana Department of Correction to provide the full name, date of birth, and last known home address of any defendant who does not waive service if it has such information; and

(10) ORDERS, under 42 U.S.C. § 1997e(g)(2), Dr. Nancy Marthakis and the Warden of Indiana State Prison to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order; and

(11) ORDERS the Warden of the Indiana State Prison to file and serve a response to the preliminary injunction motion, as soon as possible but not later than **January 16, 2023**, with supporting medical documentation and declarations from other staff as necessary, describing what care the plaintiff is receiving to address his leg and back pain.

SO ORDERED.

December 22, 2022                                         *s/ Damon R. Leichty*
                                                         Judge, United States District Court